ALITO, Circuit Judge,
dissenting:
In Fuentes v. Perskie, 32 F.3d 759 (3d Cir.1994), we laid out the evidentiary requirements a plaintiff has to satisfy in order to survive a motion for summary judgment in a “pretext” employment discrimination case under Title VTI. We held that where the employer has proffered a legitimate reason for its employment action, the plaintiff must submit evidence that either:
(1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or
(2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.
Id. at 762 (emphasis added). In Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1067 (3d Cir.1996), petition for cert. filed, 65 U.S.L.W. 3571 (Feb 03, 1997) (No. 96-1231), the en banc court reaffirmed Fuentes. I dissent here because I do not see the plaintiff, Beryl Bray, as having met the Fuentes evidentiary burden for showing pretext.
In the district court, Bray argued that she was entitled to survive Marriott’s summary judgment motion because she had satisfied both prongs of the two-prong Fuentes test. On prong one, which involves discrediting the employer’s proffered legitimate reasons for the employment decision, Bray’s argument was that she “exceeded Ms. Riehle [her competitor, who was promoted instead] in every objective test that could be employed to evaluate the two candidates and that the only criteria under which Ms. Riehle exceeded plaintiff involved subjective inquiries which are simply not credible.” (Dist.Ct.Op. at 17-18). On prong two, which requires plaintiff to show that racial discrimination was more likely than not a motivating or determinative cause of the adverse employment decision, Bray pointed to a document setting forth the minority hiring goals of the Park Ridge Marriott, and alleged that the failure to meet these goals made it “more probable than not that racial discrimination was a motivating or determinative factor in her rejection for the position of Director of Services.” (Dist.Ct. Op. at 21). The district court found Bray’s arguments insufficient on both prongs and granted Marriott’s motion for summary judgment.
As I read Bray’s brief on appeal, she is challenging the district court’s determination on prong one. She says she has “pointed to enough weaknesses, implausibilities, inconsistencies, incoherences or contradictions in the employer[’]s proffered legitimate reasons to overcome summary judgment regarding plaintiffs Title VII claim.” (Appellant’s Br. at 2). Marriott’s proffered legitimate reason for why it promoted Therese Riehle over Bray was that Riehle was better qualified. Bray counters with the assertion that the evidence shows that her qualifications were so much better than those of Riehle that “there is no reasonable explanation as to why Riehle was given the position over Beryl *999 Bray other than using race as a consideration.” [11] (Appellant’s Br. at 6).
What kind of evidence does prong one require? The prong one requirement is that plaintiff has to point to “evidence, either direct or circumstantial, from which a factfin-der could reasonably ... disbelieve the employer’s articulated reasons.” Fuentes, 32 F.3d at 764. Fuentes explains that:
,To discredit the employer’s proffered reason, however, the plaintiff cannot simply show that the employer’s reason was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, or contradictions in the employer’s proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.
Id. at 765 (internal citations and quotations omitted).
Fuentes tells us that the burden on a plaintiff who chooses to proceed under prong one is a “difficult” one. Id. at 765. That the burden under prong one is “difficult” makes sense because plaintiff is attempting to indirectly produce an inference of intentional discrimination out of the fact that the employer’s proffered reason was untrue. Hence, where, as is the case here, the defendant asserts that it made the choice among candidates that it did because it wanted the “best qualified” candidate, plaintiff would have to point to evidence that showed either (1) that the defendant’s selection process and criteria were filled with such inconsistencies that the employer’s claim that it was seeking the “best qualified” candidate was a sham or (2) that the qualifications of the person actually promoted were so much lower than those of her competitors that a reasonable factfin-der could disbelieve the claim that the employer was honestly seeking the best qualified candidate.
It is crucial to understand that prong one is not satisfied if plaintiff merely points to evidence that shows that her qualifications were roughly comparable to those of her competitors. Nor is prong one satisfied by evidence that the employer is not “fair” or “kind” as a general matter. Prong one requires that plaintiff point to evidence from which a reasonable factfinder can “disbelieve the employer’s articulated reasons.” Fuentes, 32 F.3d at 764 (emphasis added). “Disbelieve” is a higher standard than “disagree.” It is not enough for the evidence to be such that a reasonable factfinder could disagree with the employer as to which candidate was better qualified. Instead, the evidence must be such that a reasonable factfin-der can infer that the employer was not truly looking for the best qualified candidate, i.e., that the employer’s articulated legitimate reason was pretextual. The burden on a plaintiff seeking to proceed on prong one is difficult, but as Fuentes explains, “ ‘[i]t arises from an inherent tension between the goal of all discrimination law and our society’s commitment to free decisionmaking by the private sector in economic affairs.’ ” 32 F.3d at 765 (quoting Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 531 (3d Cir.1992), cert. denied, 510 U.S. 826, 114 S.Ct. 88, 126 L.Ed.2d 56 (1993)).
Moving back to the case at hand, Bray’s burden under prong one was to show either that there were so many inconsistencies in the criteria and procedures that Marriott used in its selection process that a reasonable factfinder could infer that the process was a sham and was not aimed at finding the best qualified candidate, or that Bray herself was so much better qualified than Riehle for the job in question that a reasonable factfinder could conclude that Marriott did not, in fact, honestly believe that Riehle was better qualified than Bray. I dissent because the majority has not come close to holding Bray to her *1000 burden under prong one and has thereby impermissibly diluted Fuentes’ prong one requirements for crossing summary judgment.
The majority here, after articulating the prong one test from Fuentes, goes on to cite Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 638-39 (3d Cir.1993), for the proposition that “[a]n inference of pretext may arise if the plaintiff can raise suspicions with respect to the defendant’s credibility or the employer’s treatment of the employee.” Maj. Op. at 990 (emphasis added). Relying upon this statement derived from Josey, the majority identifies evidence from which a factfinder could conclude that Marriott may have treated Bray unfairly in not following the proper internal firm processes in rejecting her. I acknowledge that this evidence does literally satisfy the statement that “[a]n inference of pretext may arise if the plaintiff can raise suspicions with respect the defendant’s credibility or the employer’s treatment of the employee.” Maj. Op. at 990 (citing Josey, 996 F.2d at 638-39) (emphasis on a term added by majority). But that statement has to be read in context. The relevant context is that the evidence of “suspicion” has to be such that it could allow a reasonable factfinder to conclude that the employer’s proffered reason for the non-promotion was a lie. That the plaintiff has been able to identify evidence showing that the employer did not follow the proper internal procedures, or that the employer was not completely truthful in its depositions, should not by itself enable the plaintiff to cross the summary judgment hurdle if the identified evidence would not enable a reasonable factfinder to conclude that the employer’s proffered reason for denying the promotion was false. In other words, so long as Bray is proceeding on prong one, she is required to point to evidence from which a reasonable factfinder could infer that Marriott did not honestly believe that Riehle was better qualified than Bray.
To me, the evidence in this case shows two things — (1) that the qualifications of Bray and Riehle for the Director of Services position they were seeking were roughly equal and (2) that Marriott may have treated Bray unfairly by not following its own internal procedures as to giving her proper notice that she had been rejected and failing to give her a proper explanation for her rejection. If we had a case where the only evidence was that the competing employees had qualifications that were roughly similar and the job in question was a service-sector managerial position, such as the one here, the case would be easy. In such service-sector managerial jobs the qualifications of the candidates are often no more than loosely correlated with the position to which the candidates are seeking promotion, and the qualifications being weighed tend to include subjective internal evaluations of the candidates as important components of the final determination. In such a case, unless the qualifications' of the candidates are extremely disproportionate, it is hard to see how a district court could deny summary judgment to an employer who claims that it, in its business judgment, thought one candidate was better qualified than the other. Cf. Ezold, 983 F.2d at 527 (cautioning against “‘unwarranted invasion or intrusion’ into matters involving professional judgments about an employee’s qualifications for promotion”).
The majority’s claim, however, is that there is more than merely evidence as to the candidates’ qualifications that shows them to be roughly equal. The claim is that there is evidence of such inconsistencies and discrepancies in the selection process that it would allow a reasonable factfinder to disbelieve Marriott’s claim that it promoted Riehle because it thought her to be best qualified. I will list that evidence and attempt to show why it does not bring into question Marriott’s claim that it promoted Riehle because it thought she was better qualified than Bray.
First, Marriott had a procedure for in-house promotions whereby, upon conclusion of a screening of the candidates, only one person could be chosen for a personal interview with the hiring manager. Maj. Op. at 991. After this interview, the hiring manager had to decide whether to hire the candidate before conducting further interviews. Maj. Op. at 991. Bray claims, and we take that claim as fact, that she was interviewed for the Director of Services position first. *1001 Maj. Op. at 991. Therefore, before Marriott could conduct subsequent interviews, its internal procedures required it to reject Bray-first. Maj. Op. at 992. However, Bray did not learn that she had been turned down for the position until after Riehle had been interviewed and offered the job. Maj. Op. at 992.
This evidence does not show any more than the fact that Marriott did not comply with its internal rules by failing to inform Bray that she had been rejected before interviewing and hiring another candidate. The majority, however, sees this evidence as combining with other evidence from depositions to warrant reversal of the district court’s grant of summary judgment to Marriott.
The second piece of evidence identified by the majority is that Leo Nemetz, the General Manager at the Park Ridge Marriott, testified at his deposition, with respect to Bray, that:
I thought she was an excellent employee who was a maintainer. If I thought she was capable of doing the job, I may have given it to her. But I was looking for the best qualified candidate.
Maj. Op. at 992 (emphasis added by majority). The majority latches on to the statement of Nemetz that he did not think Bray “capable of doing the job,” and claims that the statement was so clearly erroneous that a factfinder could have concluded that there was illegal bias in the selection process. Maj. Op. at 992. I utterly fail to see this. As a literal matter Nemetz appears to have been in error in suggesting that Bray was not “capable of doing the job.” But in his very next statement, he qualified what he had said about Bray by explaining: “[b]ut I was looking for the best qualified candidate.” Maj. Op. at 992 (emphasis added). This latter statement implies that Nemetz thought that Bray was not the “best” among the candidates, and that that was what he meant by stating that Bray was not qualified — as opposed to Nemetz thinking that Bray did not possess the minimal qualifications necessary to perform the job. But the majority ignores Nemetz’s explanation that he was looking for the “best qualified candidate.” For me, Nemetz’s explanation makes it clear that the former statement, “[i]f I thought she was capable of doing the job, I may have given it to her” was no more than loose language. That this was no more than loose language is confirmed by the fact that Nem-etz, upon being pressed by Bray’s counsel as to whether he really meant that Bray did not possess the minimal qualifications for the job, withdrew that statement. Maj. Op. at 992. The majority, however, isolates the “[not] capable of doing the job” language and concludes that there is evidence from which it could be inferred that the employer was not truly looking for the “best qualified candidate.”
In any event, it does not matter whether Nemetz was in error in stating that he thought Bray was not qualified. The issue is whether Marriott was not credible in its proffer that it honestly thought Riehle to be the “best qualified” candidate. I fail to see how pointing to loose language in a deposition satisfies this burden.
The majority then proceeds to identify another piece of evidence that it says casts “[flurther doubt ... upon the selection process.” Maj. Op. at 992. This evidence is deposition testimony by Nemetz that Riehle had been “unanimously” selected by a three-member selection committee as the number one candidate. Maj. Op. at 992. Later, Nemetz modified his position to explain that one of the three members, George Joosten, had asked to stay out of the decision.[12] Maj. Op. at 992. What would this evidence show a reasonable factfinder? It does not attack or bring into doubt any of Riehle’s qualifications. Instead, all it shows is that Nemetz, *1002 once again, was loose with his characterization of the facts as to the selection process. However, unless the evidence goes to undermine Marriott’s assertion that it thought Riehle was better qualified and promoted her for that reason, Bray should lose at summary judgment.[13]
I will not test the reader’s patience by describing the comparative evidence as to Bray’s and Riehle’s qualifications. I merely reiterate that while the evidence may not show that Riehle was clearly the superior candidate, as the district court thought, it shows that the candidates were approximately equal in qualifications. Reasonable people could probably differ on their thoughts as to which candidate was better qualified, but that is not the question. Instead the question in this prong one analysis is whether a reasonable factfinder could determine, based on the evidence, that Marriott could not have honestly thought that Riehle was better qualified. Given the subjective nature of many of the qualifications being considered and the amorphous nature of the question of what qualifications were needed to perform the specific job for which promotion was being sought, I do not see how a reasonable factfin-der could find that Marriott did not honestly think Riehle to be better qualified. The inconsistencies and discrepancies that Bray identified were too minor and the qualifications of the candidates too similar for a reasonable factfinder to determine that Marriott was lying when it stated that Riehle was selected because Marriott believed she was more qualified.
There is only one piece of evidence that the majority points to that I see as directly attacking Marriott’s claim that it thought Riehle was better qualified. Nemetz testified that Riehle’s higher performance ratings (“PAFs”) were a crucial factor in Marriott’s thinking that Riehle was better qualified than Bray. Maj. Op. at 994. It is undisputed that Riehle’s raw PAF scores were higher than those of Bray. Riehle had two scores of “1” and one of “2,” whereas all of Bray’s scores were “2s.” But the majority has found evidence in the record that it views as showing these scores to be suspicious. What the majority has found is that one of Riehle’s evaluations was a “semi-annual” evaluation, as opposed to the normal “annual” evaluation. Maj. Op. at 994. This, the majority suggests, puts the PAF scores under suspicion.
I agree that if indeed Riehle was given an additional, unscheduled and unexplainable review, it looks like an improper bolstering of credentials, and could make it somewhat plausible for a factfinder to conclude that Marriott did not think that Riehle was, in fact, better qualified. But I can find no mention of this “semi-annual” review, let alone any argument based on it, anywhere in Bray’s briefs.[14] Nor can I find reference to this point in the papers opposing summary judgment that Bray filed in the district court. I believe it is problematic to attach importance to inferences that could be drawn from evidence that the parties have not had an opportunity to adequately consider and explain.
*1003 We asked Marriott’s counsel about the “semi-annual” review at oral argument and he did not have an explanation. Maj. Op. at 994 n. 6. But Marriott’s counsel had probably never asked his client to explain the “semiannual” review to him. My unease with attaching too much significance to counsel’s failure to explain is further amplified by the fact that Marriott’s counsel at trial had passed away in the period between trial and appeal, and counsel on appeal was new.
In sum, the evidence here shows (1) that the two applicants were of roughly equal qualifications with respect to the job for which they were seeking promotion and (2) that the employer may have acted unfairly in failing to follow proper internal procedures in rejecting one of the candidates. Under existing anti-discrimination law, evidence of unfairness in .the selection process alone, without evidence linking the unfairness to race-based animus, should not be enough to get a plaintiff beyond summary judgment, so long as the employer’s proffered legitimate reason for the employment decision remains intact. I respectfully suggest that what the majority here has done is to weaken the burden on the plaintiff at the pretext stage of the McDonnell Douglas framework to one where all the plaintiff needs to do is to point to minor inconsistencies or discrepancies in terms of the employer’s failure to follow its own internal procedures in order to get to trial. I have no doubt that in the future we are going to get many more cases where an employer is choosing between competing candidates of roughly equal qualifications and the candidate who is not hired or promoted claims discrimination. I also have little doubt that most plaintiffs will be able to use the discovery process to find minor inconsistencies in terms of the employer’s having failed to follow its internal procedures to the letter. What we end up doing then is converting anti-discrimination law into a “conditions of employment” law, because we are allowing disgruntled employees to impose the costs of trial on employers who, although they have not acted with the intent to discriminate, may have treated their employees unfairly. This represents an unwarranted extension of the anti-discrimination laws.

. Bray's ultimate burden at trial will be to demonstrate that intentional racial animus was the reason for her non-promotion — in effect, a requirement that she demonstrate prong two of the Fuentes test. See Henry L. Chambers, Getting it Right: Uncertainty and Error in the New Disparate Treatment Paradigm, 60 Alb.L.Rev. 1, 31 (1996). However, at the summary judgment stage Bray needs only to demonstrate her prima facie case and prong one. See Fuentes, 32 F.3d at 764.

. There is no evidence that Joosten opposed Riehle's promotion. In fact, after Riehle was hired, he told Bray:
You are both equally qualified. You had the experience. She had the rating of a one. And since you were — since you had been there for a while we thought it wouldn’t be an incentive for you.
Maj. Op. at 992-93 (emphasis added). If anything, it appears from Joosten's explanation that he did not find his two colleagues' determination that Riehle was the better qualified candidate problematic, even though he thought the two candidates were equally qualified.

. In addition, there was testimony from the Park Ridge Marriott's former Director of Services, Richard Lesser, that "it was common knowledge that one of the policies at Marriott was to promote from within the subject hotel, if at all possible.” Maj. Op. at 996. Marriott disputes this claim, but even if taken as true it would not go to attack Riehle’s qualifications or Marriott's claim that it thought Riehle better qualified. As with the other evidence identified by the majority, this piece merely goes to show that Bray was not afforded the proper internal process in her rejection. But anti-discrimination law does not attempt to police fairness in employment as a general matter, but rather only polices the narrow area of intentional discrimination in employment decisions.

. Issues not raised are waived. See Laborers' Int’l Union of N. Am. v. Foster Wheeler Energy Corp., 26 F.3d 375, 398 (3d Cir.) ("An issue is waived unless a party raises it in its opening brief, and for those purposes 'a passing reference to an issue ... will not suffice to bring that issue before this court.' " (citation omitted) (ellipsis in original)), cert. denied, 513 U.S. 946, 115 S.Ct. 356, 130 L.Ed.2d 311 (1994); see also Commonwealth of Pa. Dept. of Public Welfare v. United States Dept. of Health and Human Services, 101 F.3d 939, 945 (3d Cir.1996). However, what we are talking about here is evidence that was not mentioned, as opposed to a legal argument not raised.